RAILROAD COMMISSIONERS OF STATE OF FLORIDA v. BURLESON, Postmaster General, et al.

(District Court, N. D. Florida. January 24, 1919.)

1. COURTS ⟨⟩270—DISTRICT COURT—RESIDENCE OF DEFENDANT.

When a federal question is involved, suit is maintainable only in district of defendant's residence.

2. COURTS ⟨⟩318—DISTRICT COURT—RESIDENCE OF DEFENDANTS—IMPROPER JOINDER.

Where pleadings show that a codefendant is not responsible for acts complained of, and that the suit may be maintained against the principal defendant in the district of his residence, the suit will be dismissed as against the defendant improperly joined.

3. COURTS ⟨⟩270—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—DISTRICT OF SUIT.

A federal court is without jurisdiction of a suit against the Postmaster General, as administrator of a telegraph and telephone system under government control, in a district of which he is not a resident and over his objection, to enjoin enforcement of intrastate telephone rates established by him, on the ground that his action is in violation of the joint resolution authorizing such control.

In Equity. Suit by the Railroad Commissioners of the State of Florida, against Albert S. Burleson, Postmaster General, United States Telegraph and Telephone Administration, and the Southern Bell Telephone & Telegraph Company  On objection of defendant Burleson to jurisdiction, and motion by Telephone Company to dismiss. Bill dismissed.

Dozier A. De Vane, of Tallahassee, Fla., for complainants.

John L. Neeley, U. S. Atty., of Tallahassee, Fla., for respondent Burleson.

W. A. Blount, of Pensacola, Fla., and Fred T. Myers, of Tallahassee, Fla., for respondent Southern Bell Telephone & Telegraph Co.

SHEPPARD, District Judge. The complainants' bill, exhibited against the Postmaster General and the Telephone & Telegraph Company, asks for a restraining order against the defendants, pendente lite, and ultimately an injunction against the defendants, their agents, etc., from putting into operation, or from continuing in effect on toll lines of the Southern Bell Telephone & Telegraph Company, in Florida, on any intrastate telephonic connection, the toll rates and charges prescribed by the Postmaster General's order No. 2495, or in any wise establishing, or attempting to establish, maintain or collect toll charges for intrastate telephonic communication, other than those authorized by the Railroad Commissioners of Florida.

The jurisdictional averments of the bill show that complainants are citizens of Florida; that defendant Burleson is a nonresident of Florida, at present residing in Washington, District of Columbia; the

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Southern Bell Telephone & Telegraph Company, a "foreign corporation," organized and existing under the laws of New York.

There is no attempt to define the Telegraph and Telephone Administration, except to say that the Postmaster General has proclaimed his operation of the Bell system under that designation, and this may be passed as merely descriptio personæ. The complainants do not rest the ground of jurisdiction upon diversity of citizenship alone, but, after asserting diversity of citizenship and amount involved, aver that defendants seek to take the property of their patrons without due process of law and in violation of the Fourteenth Amendment; that the Postmaster General is assuming to take possession of and operate intrastate lines in Florida under regulations and rates prescribed by him, in virtue of a resolution of Congress and the proclamation of the President, pursuant thereto, vesting in said Burleson the assumed authority to supervise and regulate intrastate as well as interstate rates.

The bill further avers that the resolution of Congress under which the Postmaster General was designated for federal administration, by the President, limits his authority to government communications and censorship, and preserves and continues the law of the state, and authority of complainants for rate regulation over telephone lines in Florida.

The United States attorney, on behalf of the defendant Burleson, filed written objection to the granting of any injunction against the latter, because it appears by the bill that he is an inhabitant personally and officially of the city of Washington, District of Columbia, and objects to being sued in the Northern district of Florida, or elsewhere than in the district whereof he is an inhabitant.

Defendant Bell Telephone & Telegraph Company answers that it is misjoined in the suit, and that no relief can or should be granted against it, because of the resolution of Congress and proclamation of the President, pursuant thereto, and the official orders of the Postmaster General assuming exclusive control and supervision of defendant's system in Florida and designating certain persons therein named as the personnel of his administration; that the Postmaster General has taken over the entire system of defendant under the President's proclamation, and that the Postmaster General and defendant had entered into a contract for the control of the properties of defendant, the former taking its revenues as earned and paying the operating expenses, including the compensation of its employés. Quoting a pertinent paragraph in the answer:

"That on the 1st day of August, 1918, under authority of the resolution and President's proclamation, the Postmaster General went into complete and exclusive possession and control of respondent's lines. While the employés and officers of the company were continued in their positions, they ceased to operate the properties on behalf of the respondent; their services in connection with the operation, maintenance, and extension of said lines and properties were, since that date, exclusively for the United States government, conformably with the orders and instructions constantly and uniformly given by the Postmaster General. * * * That, when the contract was made with the government, provisions were made for the rental to be paid by the government to the respondent for the use of its properties, and that the respondent is

not now, has not been, and will not be, as long as the property is in the possession and control of the government, pecuniarily interested in the revenues to be derived from the operation of its lines by the government."

The answer further sets up that all changes and adjustments in rates and changes in regulations are exclusively directed by the Postmaster General, and moves, for these and kindred reasons set forth, that it be dismissed from the suit and the injunction be denied.

Exhibited with respondent's answer is the proposal of the Telephone & Telegraph Company, and the acceptance by the Postmaster General, in which respondent accepts a just compensation for federal control and operation of the telephone system taken by the President under the joint resolution, which acceptance includes all of the telephone property operated by the Bell system, whether owned or leased, except its right to use, during federal administration, such portion of the office buildings as may be reasonably necessary to provide accommodations for its corporate organization, and such private use of the federal telephone system as it may make on such terms as the Postmaster General may prescribe.

Equity rule No. 29 (198 Fed. xxvi, 115 C. C. A. xxvi) provides that defenses in point of law, arising upon the face of the bill, may be made by motion in the answer; and the objection interposed by the Postmaster General may be considered as a plea to the jurisdiction. The questions will be considered as thus submitted.

It may be seen from the foregoing summary that the complainants have proceeded upon more than one ground of jurisdiction. The bill discloses a diversity of citizenship as to both defendants, and asserts jurisdiction because of the diversity of citizenship, and, secondly, because of the federal question involved, and avers at length that the Postmaster General is attempting to prescribe telephone rates on intrastate lines of respondent to be substituted for the rates prescribed by the Railroad Commissioners of Florida, and that his pretended authority to do so is based on the resolution of Congress; that by the proviso therein his authority is limited to regulations which may effect the transmission of government messages only, and the issue of stocks and bonds; and that the authority thereby conferred upon the President was not to affect existing laws or powers of the states under lawful police regulations.

It is plain, therefore, that the allegations of the bill invoke a construction of a law of Congress, in that whether the Postmaster General, under the resolution, is invested with power to regulate tolls on intrastate lines, or whether it was reserved to the complainants, the Railroad Commissioners, under the lawful police regulations of the state, depends upon a construction of the proviso contained in the Resolution. That being so, jurisdiction cannot be sustained by reason of diversity of citizenship alone.

[1-3] It is well settled that, where jurisdiction is not founded on diversity of citizenship only, then the defendant may object to being sued in any other district than that of which he is an inhabitant. Section 51,

Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. § 1033]). It is long judicially established that where the title or right set up by the party may be defeated by one construction of the law of the United States, or sustained by the opposite construction, it involves distinctly a federal question (Macon Grocery Co. v. Atlantic Coast Line Railroad, 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300), and it requires only a fair interpretation of the pleader's case, made by the bill, to determine that the right or relief depends upon a construction of the proviso contained in the resolution. A case arises under the law of the United States, when it arises out of the implication of the law. Macon Grocery Co. v. Atlantic Coast Line Railroad, supra, and cases cited. It follows, therefore, inevitably that the Postmaster General may object to the venue of the present suit, and this right to be sued in the district of which he is an inhabitant was in no wise affected by the theory of the bill, that the local officers of the telephone company are his agents, and are at his instance committing the wrongs complained of. It is true that it was held by the Supreme Court, in Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204, that if the person who is the real principal, and who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, and exempt from all judicial process, it would be subversive of the best-established principles to say that the law could not afford the same remedy against the agent employed in doing the wrong which it would afford against him, could he be joined in the suit. But in that case, as distinguished from this, the principal was the state of Ohio, not amenable to process, and here it is an administrative officer of the government, attempting, according to charges of the bill, an unlawful usurpation of authority. It was observed in the Osborn Case, supra, if the party before the court would be responsible, why may not he be restrained from its commission, if no other party can be brought before the court. Yet, if the agents of the party not before the court would be responsible for the injury, they might be restrained if no other party was legally accessible. Upon the authority of the decision of the Osborn Case, supra, there are presented here two insuperable difficulties to jurisdiction: First, the Postmaster General is a proper party, and may be sued in the proper jurisdiction; secondly, the answer and exhibits of the telephone company make a complete disclaimer of any connection, by agency or otherwise, with the present federal administration of the telephone lines within the jurisdiction of the court. The contract attached as an exhibit to the answer supports this contention. It is true that the affidavit of Commissioner Blitch, exhibited with the bill, affirms "that, so far as deponent knows and has ascertained, there is no supervisor for Florida of the properties of the Southern Bell Telephone & Telegraph Company; that in all other matters relating to the regulation of the properties of the Southern Bell Telephone & Telegraph Company, within the jurisdiction of the Railroad Commissioners of Florida, the same officials of the Southern Bell Telephone & Telegraph Company have appeared before the Railroad Commissioners of Florida in the

same manner since the government control and operation of said properties as prior thereto"; and further, in substance, that the Postmaster General's order 2495, putting into effect the rate of the former, was transmitted to the Railroad Commissioners by J. Eppes Brown, first vice president of the Southern Bell Telephone & Telegraph Company.

This conduct and representation of the vice president of the company is not inconsistent, in the view of the court, with the showing of the exclusive control of the government, made by the answer and exhibits.

From what is disclosed by the record, it is patent that the Bell Telephone system, for the time being, is a governmental agency, under the control and supervision of the Postmaster General, and the agents and employés of the telephone company in a sense are loaned to federal control, and the company is not responsible for the regulations, or attempted regulations, complained of in the bill.

It follows, therefore, that the Bell Telephone Company is not a proper party to the bill, and as to it the bill should be dismissed. As to the defendant Burleson, in the absence of his consent, the court is without jurisdiction, and the bill must be dismissed as to him.