STATE OF ARKANSAS ex rel. Bruce BENNETT, Attorney General, by Ovid T. SWITZER, Special Counsel, Plaintiff,

v.

TEXAS GAS TRANSMISSION CORPO-RATION, a Delaware Corporation, Defendant.

Civ. No. 3588.

United States District Court
E. D. Arkansas, W. D.
March 6, 1959.

Bruce Bennett, Atty. Gen., of Arkansas, and Ovid T. Switzer, Crossett, Ark., and Carneal Warfield, Special Counsel, Lake Village, Ark., for defendant.

Canada, Russell & Turner and J. Martin Regan, Memphis, Tenn., and Burnside & Burnside, Lake Village, Ark., for plaintiff.

BECK, District Judge.

The Court's jurisdiction, in this case, on plaintiff's Motion to Remand, is being challenged on two grounds: (1) that there is no diversity of citizenship and (2) that there is no federal question. The case originally was commenced in the Chancery Court of Chicot County, Arkansas, thereafter transferred to the Circuit Court and from there, within the 20-day time limit and under 28 U.S.C.A. § 1446(b) removed here.

The question of diversity of citizenship, though it is assigned as one of the grounds for remanding, need not have consideration, since plaintiff's only basis for the removal is its claim that the

amount "in controversy exceeds the sum or value of $3000, exclusive of interest and costs" (which is admitted) "and arises under the Constitution, laws or treaties of the United States" 28 U.S.C.A. § 1331, and also since a civil action of that kind "shall be removable without regard to the citizenship or residence of the parties. * * *" 28 U.S.C.A. § 1441(b).

The factual basis for a motion to remand, predicated on a claim of a non-existing federal question, under the Constitution, laws or treaties of the United States, must be found in the plaintiff's complaint. This is a firmly established and existing rule(and references to it are found in the early cases as well as in decisions more recent. Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204; Postal Telegraph Cable Company v. State of Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231; Colorado Central Consolidated Mining Company v. Turck, 150 U.S. 138, 14 S.Ct. 35, 37 L.Ed. 1030; Brewer v. Hoxie School District No. 46, 8 Cir., 238 F.2d 91 decided in October 1956. The origin of the rule is referred to in Osborn v. Bank of United States, supra, as it was held that the 3rd Article of the Constitution "enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. *That power is capable of acting only when the subject is submitted to it, by a party who asserts his rights in the form prescribed by law.* It *then* becomes a case, and the Constitution declares, that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States." Where and when the facts underlying the jurisdictional question are to be presented for determination, is explained in Colorado Central Consolidated Mining Company v. Turck, supra, where it is said [150 U.S. 138, 14 S.Ct. 37]: "When, however, the original jurisdiction of a circuit court of the United States is invoked upon the sole ground that the determination of the suit depends upon some question of a federal nature, it must appear, *at the outset, from the declaration or the bill of the party suing,* (Emphasis supplied) that the suit is of that character; in other words, it must appear in that class of cases that the suit was one of which the circuit court, at the time its jurisdiction is invoked, could properly take cognizance. If it does not so appear, then the court, upon demurrer or motion, or upon its own inspection of the pleading, must dismiss the suit; just as it would remand to the state court a suit which the record, at the time of removal, failed to show was within the jurisdiction of the circuit court. * * *", by the pronouncement in Postal Telegraph Cable Company v. State of Alabama, supra, that [155 U.S. 482, 15 S.Ct. 194]: "It is equally well settled that * * * no suit can be removed by a defendant from a state court into the circuit court of the United States as one arising under the constitution, laws, or treaties of the United States, *unless the fact that it so arises appears by the plaintiff's statement of his own claim * * *.*", and by Judge Woodrough, as recently as in the case of Brewer v. Hoxie School Dist. No. 46, supra, as he dealt with this precise point [238 F.2d 97]: "* * * *before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent 'the party who brings a suit is master to decide what law he will rely upon and * * * does determine whether he will bring a "suit arising under" the * * * [Constitution or laws] of the United States by his declaration or bill.' The Fair v. Kohler Dye & Specialty Company, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716."* (Emphasis supplied.)

Other restrictions, even more limiting as to scope, are a part of this rule. Averred facts in a complaint com-

ing under classifications of surplusage and anticipatory defenses, even, are to be disregarded. Court excursions into fields of the factual, as disclosed by amendments, petitions for removal, proceedings on motions to remand or in a defendant's answer, counterclaim or other pleading, are not permitted. The search for the facts which have bearing on the existence or non-existence in a case involving a federal question, must be confined to those the plaintiff in his original complaint, has seen fit to plead and disclose. Postal Telegraph Cable Company v. State of Alabama, Colorado Central Consolidated Mining Company v. Turck, supra, and State of Tennessee v. Bank of Commerce, 152 U.S. 454, 14 S.Ct. 654, 656, 38 L.Ed. 511. As said in the first of those citations: "* * * a deficiency in his statement, (plaintiff's complaint) in this respect, cannot be supplied by allegations in the petition for removal or in subsequent pleadings in the case"; in the second: "It (the court) cannot retain it (the jurisdiction) in order to see whether the defendant may not raise some question of a federal nature upon which the right of recovery will finally depend; and, if so retained, the want of jurisdiction, at the commencement of the suit, is not cured by an answer or plea which may suggest a question of that kind.", and in the third: "But 'the right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up. His right to sue is anterior to that defense, and must depend on the state of things when the action is brought.' "

■ What effect then, must be ascribed to the allegations in plaintiff's original petition, related to the question before the Court on this motion and in the following form:

"That the defendant, Texas Gas Transmission Company, is a Delaware Corporation engaged in the business of transporting natural gas and other products through large pipelines, and that several of said pipelines are laid across Chicot County, Arkansas and cross the Mississippi River from various points in Chicot County, at which points said pipelines are laid across the bed or bottom of the Mississippi River.

"That Article I of the Constitution of the State of Arkansas defines the Eastern Boundary of the State of Arkansas as running from its Southern Boundary at the Middle of the main channel of the Mississippi River, thence up the middle of the main channel of the Mississippi, including an island in said river known as "Belle Point Island" * * to the 36th degree of North Latitude.

"That the Eastern Boundary of all privately owned lands in Chicot County, Arkansas is the high-water mark of the right bank of the Mississippi River as defined by the vegetation line, and that the State of Arkansas is the sole owner of the land between said highwater mark on the right bank of the Mississippi River and the middle of the main channel of said river, including the bed or bottom of the Mississippi River.

"That the defendant, Texas Gas Transmission Company, has laid and is maintaining pipelines for transmitting gas and other products across the Mississippi River and across or under land belonging to the State of Arkansas, without authority from the State of Arkansas, and has so maintained said lines for many years.

"That defendant's use of said land belonging to the State of Arkansas without authority constitutes a continuing trespass and plaintiff has no adequate remedy at law by which it can stop said unlawful and illegal use of its property, and that plaintiff will suffer irreparable injury and damage unless this court enters a restraining order herein perpetually enjoining and restraining the defendant from further trespassing on said state lands."

These allegations, in summarized form, amount to a claim by the plaintiff that it in the capacity of "sole owner" of half of the adjoining Mississippi River bed, as against the defendant, who is engaged in inter-state commerce and for that purpose has laid its transportation pipe lines on the bed of that river, can successfully enjoin against such use and recover damages.

The plaintiff's title, in the sense that it goes back to the government patent, is not under that claim, a federal question on this motion. On that point the authorities are in full accord and this is conceded by both parties. There is, however, in the "sole ownership" claim, the rather obvious assertion, that such ownership is paramount and superior to the rights of the United States under Article 1 Sec. 8, Clause 3 of the Constitution, giving Congress the power:

"to regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes; * * *."

and that there is no conflict between such a claim and the following provisions of the laws of the United States:

43 U.S.C.A.

"Section 931. Navigable rivers public highways. All navigable rivers, within the territory occupied by the public lands, shall remain and be deemed public highways; and, in all cases where the opposite banks of any streams not navigable belong to different persons, the stream and the bed thereof shall become common to both. (R.S. § 2476.)" (Passed in 1796)

33 U.S.C.A.

"Sec. 10. Waters in Louisiana Purchase as public highways

"All the navigable rivers and waters in the former Territories of Orleans and Louisiana shall be and forever remain public highways. R.S. § 5251." (Passed in 1811)

43 U.S.C.A.

"§ 966. Right of way in Arkansas to pipe line companies. A right of way through the public lands of the United States in the State of Arkansas is granted for pipe-line purposes to any citizen of the United States or any company or corporation authorized by its charter to transport oil, crude or refined, or natural gas which shall have filed or may hereafter file with the Secretary of the Interior a copy of its articles of incorporation, and due proof of organization under the same, to the extent of the ground occupied by the said pipe line and ten feet on each side of the center line of same. (Apr. 12, 1910, c. 155, § 1, 36 Stat. 296.)"

15 U.S.C.A.

"§ 717. Necessity for regulation of natural gas companies

"(a) As disclosed in reports of the Federal Trade Commission made pursuant to S.Res. 83 (Seventieth Congress, first session) and other reports made pursuant to the authority of Congress, it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and *that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.*" (Emphasis added.)

and the Submerged Lands Act passed by Congress in 1953:

43 U.S.C.A. § 1314

"(a) The United States retains all its navigational servitude and rights in and *powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce,* navigation, national defense, and international affairs, *all of which shall be paramount to,* but shall not be deemed to include, proprietary rights of ownership, or the rights of manage-

ment, administration, leasing, use, and development of the lands and natural resources which are specifically recognized, confirmed, established, and vested in and assigned to the respective States and others by section 1311 of this title."

Conflicts appearing between those provisions and the "sole ownership" claim, are issues apparent from the face of the plaintiff's original petition. They come within the rule referred to in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 97, 81 L.Ed. 70, by Judge Cardozo as he made the comment:

> "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. City of New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank of Canton, Pa. v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Id.; King County v. Seattle School District No. 1, 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339." 57 S.Ct. at page 97,

and they compel the conclusion that the plaintiff by that pleading has raised a federal question or questions, under the Constitution and laws of the United States.

The allegations contained in the Substituted and Amended Petition, are in no material respects different from those in the original, hence, it is unnecessary to give consideration to the plaintiff's contention that those contained in the amendment are controlling and decisive under existing procedural rules in Arkansas.

The plaintiff's Motion to Remand, must for these reasons, be denied and it is hereby so held.